IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-682-D

| | |
|---|---|
| ANGELA H. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM** |
| | ) **AND RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

In this action, plaintiff Angela H. Johnson ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 10, 14. Both filed memoranda in support of their respective motions. D.E. 11, 15. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). 7 Feb. 2017 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND**

A. **Case History**

Plaintiff filed an application for DIB on 27 March 2013, alleging a disability onset date of 29 November 2010. Transcript of Proceedings ("Tr.") 14. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 14. On 28 October 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 24-56. The ALJ issued a decision denying plaintiff's claims on 4 February 2015. Tr. 14-19. Plaintiff timely requested review by the Appeals Council. Tr. 6-10. On 6 June 2016, the Appeals Council denied the request for review. Tr. 1, 2.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 15 July 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 405(g). *See* Compl. (D.E. 1).

B. **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]
>
> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.
>
> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC],

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C.     ALJ's Findings

According to plaintiff's testimony, she was 49 years old on the alleged onset date of disability and 53 years old on the date of the hearing. *See* Tr. 29. Plaintiff testified that she completed the twelfth grade. Tr. 29. The ALJ found that plaintiff had past relevant work as a secretary and receptionist. Tr. 18 ¶ 6.

The ALJ determined that plaintiff's last date insured was 30 June 2012. Tr. 14; 16 ¶ 1. Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ then found at step one that plaintiff had not engaged in substantial gainful activity from the alleged date of onset of disability through the last date insured. Tr. 16 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease and plantar fasciitis. Tr. 16 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings. Tr. 16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work, as defined in the Regulations:[5]

---

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[5] The Regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

She could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk six hours each in an eight-hour workday. She could occasionally stoop and crouch.

Tr. 16 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was able to perform her past relevant work as a secretary and receptionist as she actually performed them and as they are generally performed. Tr. 18-19 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 29 November 2010, through the date last insured, 30 June 2012. Tr. 19 ¶ 7.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent

evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISCUSSION

Plaintiff contends that this case should be reversed or modified and benefits awarded, or remanded for a new hearing on the grounds that the ALJ erred in assessing plaintiff's RFC and, as a result, finding that she could do her past relevant work instead of finding her disabled under the Medical-Vocational Guidelines.[6] The court finds no error.

### A. ALJ's RFC Determination

A claimant's RFC is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). More specifically,

> [o]rdinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.... A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do

---

[6] The Medical–Vocational Guidelines or grids, which are set out in 20 C.F.R. pt. 404, subpt. P, app. 2, are a set of rules which, as discussed further below, specify a conclusion as to whether or not a claimant is disabled, when applied directly, or are used as a framework for decision making. The Medical-Vocational Guidelines are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

despite his or her limitations or restrictions, but the *most*. RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record . . . .

Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1, 2 (2 July 1996) (footnotes omitted); *see generally* 20 C.F.R. § 404.1545.

Plaintiff contends that the ALJ's RFC determination—which plaintiff mischaracterizes as finding plaintiff able to perform only sedentary work[7]—is not supported by substantial evidence. But the ALJ's decision itself cites to evidence constituting substantial evidence supporting his RFC determination.

This evidence includes plaintiff's treatment records:

The objective medical evidence demonstrates that the claimant's impairments are not as severe as alleged. A November 2011 lumbar MRI revealed an L5-S1 herniated disc contacting the traversing S1 nerve root. The following month, treating providers gave her an injection. However, this did not help (Ex. 3F). As a result, the claimant underwent a left L5-S1 hemilaminectomy and discectomy on January 12, 2012 (Ex. 2F). *The following month, she was doing well post-surgery* (Ex. 4F).

In July 2012, the claimant fell. An August 9, 2012 lumbar spine MRI showed a central disc protrusion at the L5-S1 level, *without evidence of canal stenosis or foraminal narrowing*. She tried an injection, but it did not help the pain and discomfort in her back to her leg. On October 17, 2012, the claimant had a lumbar discectomy for a recurrent herniated disc (Ex. 3F). *Treatment records, dated 12 days later, indicated that she was overall doing well. She continued with some low back pain and left buttock pain but much of her leg pain was resolved.*

Lumbar motion was restricted as expected. However, *she was in no acute distress, fully weight-bearing, with no obvious limp. There were no issues with the claimant's incision. Seated straight leg raise testing was negative. She was making satisfactory progress.* She stated she did not need a work note at that time. Treating providers indicated the claimant should avoid heavy lifting or frequent bending. *The following November, she was 50 percent better.* She still had some back and foot pain. *On December 19, 2012, the claimant was doing better from her back surgery* (Ex. 4F).

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

> On March 6, 2014, on examination, trunk bending was with some mild discomfort. The claimant's straight leg raise resulted in some back and buttock discomfort bilaterally. *She was not in any acute distress. She was fully weight-bearing. No medications were reported. She was able to heel-toe walk*, although both maneuvers irritated her foot on the right, as well as she experienced back pain with heel walking. *In terms of her back, treating providers related that the claimant really did not request or need any additional treatment* (Ex. 7F), which is contrary to her allegation that pain disables her. *In sum, the record demonstrates that the claimant improved after her second surgery.*
>
> *With respect to the claimant's plantar fasciitis, there is no substantial mention of it in the record evidence.* Most of the record evidence addresses her back issues. . . .
>
> . . . *There is no substantial evidence in the record of any medication side effects that would have prevented the claimant from performing work activity.*

Tr. 17-18 ¶ 5 (emphasis added).

The ALJ also cited plaintiff's activities of daily living:

> The claimant's activities of daily living are inconsistent with the alleged severity level of her impairments. She testified she vacuums, cooks full meals, cleans bathrooms, and goes grocery shopping without major incident.

Tr. 18 ¶ 5.

In addition, the ALJ relied on opinion evidence, including the opinion of the nonexamining state agency consulting physician, Evelyn Jimenez-Medina, M.D., that plaintiff could perform a limited range of light work:

> As for the opinion evidence, the undersigned placed great weight in the June 2013 State agency physical assessment from [Dr. Jimenez-Medina] (Ex. 3A). Dr. Jimenez-Medina provided her opinion after the date last insured. Therefore, she had the opportunity to review all of the relevant medical evidence. The opinion at the initial determination stage is from a single decision-maker, and therefore, is provided no weight (Ex. 1A).
>
> Partial weight was given to the October 2012 treating provider statement that the claimant should avoid heavy lifting and frequent bending (Ex. 4F). While the undersigned agrees she should never engage in heavy lifting, she does not require a bending limitation. This is supported by the March 2014 examination finding of some mild discomfort with trunk bending.

Tr. 18 ¶ 5.

In support of her argument that the ALJ's RFC determination is not supported by substantial evidence, she relies heavily on her own testimony. Of course, a claimant's statements about his pain and other symptoms are not alone sufficient to establish disability. *See* 20 C.F.R. § 404.1529(a). In any event, as the ALJ indicates, in reaching her RFC determination, she discounted the credibility of plaintiff's allegations. Tr. 17 ¶ 5. Although plaintiff does not directly challenge the propriety of the ALJ's credibility determination, it was proper.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 17 ¶ 5. But at

step two, she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 17 ¶ 5. The portions of the ALJ's decision quoted above provide the principal basis for the ALJ's credibility determination. The evidence cited includes substantial evidence supporting the ALJ's determination.

The court concludes that the ALJ's RFC determination, together with the credibility determination underlying it, was proper. The court accordingly rejects plaintiff's challenge to the RFC determination.

**B.     ALJ's Determination on Plaintiff's Ability to Do Her Past Relevant Work**

Substantial evidence also supports the ALJ's determination at step four of the sequential analysis that, based on the RFC she found plaintiff to have, plaintiff would be able to perform her past relevant work as a secretary and receptionist. Such evidence consisted of the testimony of the vocational expert. He testified that both of these occupations are at the sedentary level (Tr. 49-50) and that plaintiff's RFC to perform light work would "easily accommodate both secretary and receptionist" (Tr. 50; 20 C.F.R. § 404.1567(b) (recognizing that ordinarily a claimant who can do light work can also do sedentary work)). The ALJ reviewed this testimony by the vocational expert in his decision and obviously adopted it in concluding that plaintiff could perform both these occupations. *See* Tr. 18-19 ¶ 6. The court accordingly rejects plaintiff's contention that the ALJ erred in finding plaintiff able to perform her past relevant work.

**C.     ALJ's Non-Application of the Medical-Vocational Guidelines**

Because the ALJ properly resolved this case at step four of the sequential analysis, the ALJ was not required to make a determination at step five. Therefore, contrary to plaintiff's

contention, the ALJ committed no error with respect to application of the Medical-Vocational Guidelines, which are implicated at step five. *See* 20 C.F.R. § 404.1569 (providing that the Medical-Vocational Guidelines are to be applied after a claimant is found unable to perform his past relevant work).

Plaintiff's argument regarding the Medical-Vocational Guidelines suffers from other flaws. Based on her erroneous notion that the ALJ found her to be limited to sedentary work, plaintiff contends that Medical-Vocational Guidelines Rule 201.14 would have applied to her at step five and that it would have directed a conclusion of disabled. In fact, using the exertional level of light work found by the ALJ and the vocational factors corresponding to those assumed by plaintiff (*i.e.*, those underlying Rule 201.14),[8] Rule 202.14 would have applied. It directs a conclusion of not disabled when applied directly.

But because the ALJ's RFC determination contained limitations other than the exertional limitation, the Medical-Vocational Guidelines could not be used to direct a conclusion. Instead, they would be used as a framework for decision making. *See, e.g.*, Medical-Vocational Guidelines Rule 200.00(a), (e)(2); Soc. Sec. Ruling 83-14, 1983 WL 31254 (1983). For this and the other reasons stated, the court rejects plaintiff's argument that the ALJ erred by not proceeding to step five of the sequential analysis and concluding plaintiff to be disabled under the Medical-Vocational Guidelines.

IV. **CONCLUSION**

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 14) for judgment on

---

[8] These factors are closely approaching advanced age, a high school graduate education or more not providing for direct entry into skilled work, and previous skilled or semiskilled work experience with the skills not being transferable. *See* Medical-Vocational Guidelines Rule 201.14.

the pleadings be ALLOWED, plaintiff's motion (D.E. 10) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 10 May 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 26th day of April 2017.

_____
James E. Gates
United States Magistrate Judge